UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| TODD HAFFNER, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) No. 15 C 5722 |
| | ) |
| NEW CONCEPTS DEVELOPMENT | ) Judge Rebecca R. Pallmeyer |
| CORPORATION, | ) |
| | ) |
| Defendant. | ) |

## MEMORANDUM OPINION AND ORDER

Plaintiff Todd Haffner brings this suit for relief against his former employer under the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621–34. From February 2010 to August 2014, Haffner worked for Defendant New Concepts Development Corp. ("NCDC") as its Director of Information Technology and Information Systems. On August 28, 2014, NCDC terminated Haffner's employment. Haffner filed a one-count complaint against NCDC on June 27, 2015, in which he claims that NCDC "willfully discriminated" against him because of his age by not following NCDC's internal disciplinary procedures and by holding him to a higher standard of performance than his similarly-situated coworkers who were under 40 years old. (First Amended Complaint [6] ("Am. Compl."), ¶ 11.)[1]

NCDC tells a very different story. It claims that Haffner was terminated based on his insubordination, poor performance, and multiple instances of misconduct. In addition, NCDC asserts that after being fired, Haffner logged on to the company's network from his home computer and sabotaged critical business data. Defendant NCDC has moved for summary judgment, arguing that Haffner can prove neither NCDC's liability nor his own entitlement to damages. (Defendant NCDC's Motion for Summary Judgment [74] ("Def.'s SJ Mot."), 1–2.)

---

[1] Haffner originally filed suit against "One World Computing, Inc."—a subsidiary of NCDC. (Complaint [1], ¶ 5.) Haffner amended his complaint to change the name of the defendant to the correct party, parent company NCDC, on August 28, 2015. (Am. Compl. ¶ 5.) The two complaints are otherwise identical.

Defendant has also moved to sanction Haffner under FED. R. CIV. P. 37 for numerous discovery violations and his generally "vexatious and contumacious conduct throughout this case." (Defendant NCDC's Motion for Sanctions [85], 1–2.)

For the reasons stated here, Defendant's motion for summary judgment [74] is granted. Defendant's motion for sanctions [85] is denied.

## **BACKGROUND**

NCDC is an Illinois company that designs, manufactures, and distributes after-market accessories for Apple products. Around February 5, 2010, Haffner was hired by NCDC as its Director of Information Technology and Information Systems ("IT/IS"). (Defendant NCDC's Local Rule 56.1 Statement of Undisputed Facts [76] ("DSOF"), ¶ 5.) In his role as Director of IT/IS at NCDC, Haffner managed a small team of employees, served on the company's leadership team, and reported directly to the president of the company. (*Id.* at ¶¶ 5, 9.) At the time Haffner was hired, Larry O'Connor, the founder and CEO of NCDC, served as president. (*Id.*) Haffner does not dispute that O'Connor had the authority to assign company projects to Haffner's team, and that Haffner could be held accountable for his team's performance and ability to meet deadlines. (Pl.'s Resp. to DSOF [94] ¶¶ 6–8.)

Like all of NCDC's employees, Haffner was subject to the various "employment policies and practices" outlined in NCDC's Employee Handbook. (DSOF ¶ 10.) The Handbook stated that employees could be disciplined for insubordination, showing disrespect towards fellow employees, disclosing confidential communications to third parties, and poor performance. (Employee Handbook at NCDC0000108, 124–25, Ex. 6 to DSOF [76-7].) Potential disciplinary actions included warnings, suspensions, and discharge from the company, depending on the circumstances. (*Id.* at NCDC0000108.) The Handbook made clear that there no "guarantee that one form of [disciplinary] action will necessarily precede another." (*Id.*) The Handbook emphasized further that NCDC was an at-will employer, and that either side could "terminate the employment relationship at any time, for any reason, with or without cause or notice." (*Id.* at

2

NCDC0000159.)  In March 2012, Haffner signed a document acknowledging that he received a copy of the Employee Handbook and agreed to comply with its terms.  (Deposition of Todd Haffner 76:9–77:7 ("Haffner Dep."), Ex. 1 to DSOF [76-2].)

In support of its motion for summary judgment, NCDC cites a mountain of evidence suggesting that Haffner acted insubordinately, repeatedly disclosed internal communications in e-mails to outsiders, missed deadlines, and refused to accept responsibility for the failure of a major IT project.  In 2012, Haffner was appointed as the project manager of a major, company-wide software package called "SYSPRO."  (DSOF ¶ 24–30.)  NCDC invested over $300,000 in SYSPRO, and, for more than one year, Haffner and four other employees dedicated the majority of their time to the project.  (*Id.* at ¶ 28.)  The project ultimately failed around the end of 2013 due to repeated technical issues and delays.  (Haffner Dep. 255:7–259:14, 266:1–268:15.)

After the SYSPRO failure, Haffner was disciplined for violating company policy on several occasions.  On March 27 and April 3, 2014, Haffner shared internal e-mail threads with outsiders—acts which O'Connor and others criticized as "paint[ing] [NCDC] in a bad light." (DSOF ¶¶ 13–16.)  O'Connor issued a "verbal warning" to Haffner for these incidents of "poor judgment" on April 7, 2014.  (Employee Performance Form, Ex. 8 to DSOF [76-9]) (signed by Haffner).  Both of these incidents were also discussed at length in Haffner's annual performance review, which Haffner received on June 20, 2014.  (2014 Annual Review of Todd Haffner 2–3, 8–9, Ex. 9 to DSOF [76-10].)  Haffner's annual performance review with O'Connor also discussed the SYSPRO project's failure; O'Connor hoped that Haffner could learn from the experience.  (*Id.* at 2–3, 6–8.)  Despite these criticisms, O'Connor appeared to be otherwise satisfied with Haffner's performance, and rated Haffner as "highly effective" (one rank above average). (*Id.* at 7.)

During his tenure at NCDC, Haffner admitted that he frequently took issue with O'Connor's management style; in particular, he objected to O'Connor's practice of "bypassing" Haffner and assigning projects directly to Haffner's team.  (Haffner Dep. 88:9–92:4, 98:11-

3

99:22.) Haffner acknowledged that O'Connor had the right to make these direct assignments, but took the position that O'Connor could not hold him personally accountable for any of the assignments that "Larry [O'Connor] wanted [Haffner's team] to work on without going through me." (*Id.* at 88:9–90:14) (stating that Haffner was only "somewhat" accountable for his department's performance). Haffner took this concern to O'Connor more than 20 times up until his termination. (*Id.* at 98:11–99:22.)

Furthermore, Haffner was demonstrably upset by NCDC's decision to restructure its management team in early June 2014. After the restructuring, Jennifer Soulé succeeded O'Connor as president of NCDC, and Haffner began reporting to Soulé instead. (DSOF ¶ 31.) Haffner's role within the company also changed. NCDC split his job of "Director of IT/IS" in two: Haffner remained the Director of IS, while one of his former subordinates became the Director of IT. (*Id.* at ¶ 32.) At the same time, NCDC discussed creating a new role which would rank above Haffner's position. (*Id.* at 33.) Haffner characterized these moves as "stabbing [him] in the back." (E-mail from Todd Haffner of 6/8/14, Ex. 12 to DSOF [76-13]; Haffner Dep. 231:18–233:30.) When he received his annual review on June 20, Haffner was also disappointed by the associated pay raise. (*See* E-mail from Jennifer Soulé to JoAnn Olson of 7/24/14, Ex. 13 to DSOF [76-14]; Haffner Age Discrimination Timeline 2–3, Ex. 3 to DSOF [76-4]) (stating that Haffner received a 2% raise but "should have" received 4.6%). Haffner blamed his meager raise on the fact that Soulé was now his boss. (*Id.*)

During July 2014, the relationship between Haffner and NCDC's management deteriorated. Soulé and O'Connor repeatedly expressed concerns about Haffner's behavior: "especially his judgment." (E-mail from Jennifer Soulé to JoAnn Olson of 7/24/14.) Soulé believed that Haffner was also unhappy that Soulé was promoted to the position of president of NCDC and he was not. (*Id.*) Soulé told NCDC's HR manager that she hoped to give Haffner another chance to see "if he ultimately takes any responsibility for the [SYSPRO] failure." (*Id.*) On July 25, O'Connor forwarded to Soulé an e-mail in which Haffner had corrected him on a

4

minor point—O'Connor remarked to Soulé "[n]ot sure why I tolerated this crap. . . . Todd back in debate mode." (E-mail from Lawrence O'Connor to Jennifer Soulé of 7/25/17, Ex. 14 to DSOF [76-15].) Finally, at a meeting on July 28, Haffner openly criticized O'Connor in front of his coworkers. (Summary of 7/28/14 Meeting, Ex. 16 to DSOF [76-17].) While O'Connor—who was attending the meeting remotely via speakerphone—was talking, Haffner stood up, muted the phone, and stated to the other employees in the room that O'Connor "just doesn't get it." (*Id.*) Haffner repeated the sentiment to other coworkers in follow-up conversations over the next few days. (*Id.*)

Soulé made the decision to fire Haffner on August 25, 2014, in consultation with O'Connor. (E-mail from Jennifer Soulé to Jennifer Soulé of 8/25/14, Ex. 17 to DSOF [76-18]) (Soulé's contemporaneous notes from the meeting state that she and O'Connor discussed how Haffner took time during managers' meetings to "make fun of" and "complain about things," and that Haffner exhibited "insubordination and not fitting in with culture"). Haffner was informed of his termination in a meeting with Soulé and NCDC's HR manager at 8:45 a.m. on August 28, 2014. Haffner's termination letter stated that he was being fired "due to [his] work performance not meeting the standards and expectations of [NCDC]." (Termination Letter, Ex. 20 to DSOF [76-21].) Defendant claims that Haffner's insubordination, disclosure of internal communications, missing deadlines, and unwillingness to take responsibility for the SYSPRO failure all factored in the decision to fire him. (DSOF ¶¶ 48–50; *see also* Letter from JoAnn Olson to EEOC, Ex. 22 to DSOF [76-23].) Haffner was 52 years old when he was fired. (Am. Compl. ¶ 11.)

After being escorted from the building, Haffner embarked on a campaign of sabotage against NCDC. From his home in Elburn, Illinois, Haffner sent an e-mail to over forty individuals in which he insulted O'Connor as "insane" and a "dictator[ ]" and urged the recipients to boycott NCDC. (DSOF ¶ 56.) He then attempted to access the NCDC e-mail server, but was unsuccessful. (*Id.* at 57.) At 11 a.m., Haffner managed to gain access to NCDC's

"Smartsheets" system—a repository of shareable spreadsheets which contained data concerning a wide range of NCDC's operations. (*Id.* at ¶¶ 58–66.) Haffner, either alone with the help of family members, deleted over 100 of NCDC's Smartsheets: rendering all of the documents useable for some time, and many totally unrecoverable. (*Id.*) (citing Exs. 27–37 to DSOF [76–28 to –38]).

Noticeably absent from the court's summary of facts is any suggestion that NCDC fired Haffner on account of his age. This is because Haffner has shown little interest in uncovering any evidence to support his claim. Rather, a large portion of Haffner's Rule 56.1 Statement of Additional Undisputed Facts appears to be concerned with vindicating his work performance while with NCDC. (*See* Haffner's Rule 56.1 Statement of Additional Undisputed Material Facts [95] ("PSAF"), ¶¶ 1–7, 20–24.) Haffner hangs his case on the "highly effective" rating he received in his performance evaluation in June—citing O'Connor's concluding statement that "I appreciate what you bring to [NCDC] as I know do many members of Team [NCDC]," while ignoring the preceding paragraphs in which O'Connor attempted to provide constructive criticism based on Haffner's documented shortcomings. (Haffner Decl. ¶ 16, Ex. 1 to PSAF [95-1]) (quoting (2014 Annual Review of Todd Haffner 9.) Relying on the positive statements in his performance review, Haffner disputes nearly all of the events described above. Haffner denies ever receiving any disciplinary warnings, denies that his behavior could be construed as disrespectful or insubordinate, and denies that he made any attempt to "hack" NCDC after being fired. (*Id.* at ¶¶ 5–7, 20–23, 25; Pl.'s Resp. to DSOF ¶¶ 13–18, 22–24, 30, 34, 40–42, 44–50, 55–66.) Ironically, Haffner also continues to deny that he should bear any responsibility for the failed SYSPRO implementation. (PSAF ¶ 3.) In addition, Haffner insists the Employee Handbook that *he received* in 2012 did, in fact, require NCDC to impose progressive discipline, including written warnings and documented "coaching," before an employee could be fired. (*Id.* at ¶ 20; Haffner Dep 76:9–78:22) (stating that the Handbook "could very well have changed" but admitting that he had no reason to think that it did).

6

Haffner's Rule 56.1 Statement relies entirely on a single piece of evidence: a self-sworn affidavit. (*See* PSAF ¶¶ 1–27.) Haffner's affidavit, which matches his Rule 56.1 Statement almost word-for-word, in turn relies in nothing more than baseless speculation and Haffner's own interpretation of events and other persons' mindsets.[2] (*See, e.g.,* Haffner Decl. ¶¶ 3, 6, 10, 11, 16–24.) In addition, Haffner appears to believe that if he did not explicitly admit to the legitimacy of a piece of evidence, then it cannot be used against him. (*See* Pl.'s Resp. to DSOF ¶¶ 11–13, 15, 18, 20–22, 37, 42, 45–49; Haffner Dep. 228:22–229:21.) Many of Haffner's stated "facts" stand in stark contrast to his deposition testimony. Haffner's present denial that he "hacked" NCDC after he was fired is especially notable considering that Haffner invoked the Fifth Amendment at the advice of counsel during his deposition.[3] (Haffner Dep. 144:21–147:17, 180:23–182:3, 186:5–195:22.) Haffner himself has taken no depositions during this case.

In terms of evidence to support his case, Haffner cites just two statements by the decision-maker, Jennifer Soulé, which he claims suggest discriminatory intent. The first was a statement Soulé made to Haffner back in June 2010, in which she purportedly told Haffner "how it was important for [NCDC's] products to stay young and trendy because they had to keep up with a changing youth marketplace." (Haffner Age Discrimination Timeline 1; Haffner Dep. 304.) Haffner interprets Soulé's statement to reflect her bias against older employees. (*Id.*; Haffner Decl. ¶ 17.) On another, unknown, date, Soulé apparently told Haffner that he was "not fitting in with culture." (Haffner Decl. ¶ 17.) Haffner mentions this statement for the first time in his affidavit, and fails to support it with any record evidence.

---

[2] As Defendants note, Haffner's Affidavit also contains two references to unknown documents that have not been submitted to this court. (*See* Defendant NCDC's Resp. to PSAF [105] (Def.'s Resp. to PSAF"), ¶¶ 2, 4.) These documents, which Haffner calls "NCDC0002444" and "NCDC0002492," appear to relate to the contract with the company that provided the SYSPRO software. (*See* Haffner Decl. ¶¶ 1, 2.) There is no suggestion that the presence of these documents would change the outcome of this decision.

[3] Although Haffner had the constitutional right to refuse to testify, doing so in a civil case permits the finder of fact to draw adverse inferences from that refusal. *See SEC v. Lyttle*, 538 F.3d 601, 604 (7th Cir. 2008).

Haffner also references several other former employees whose treatment by NCDC management, Haffner argues, supports his claim of age discrimination. The first two, Carleton Britt and Robert Boris, were both within Haffner's protected age class, held managerial roles, and were also fired by Soulé. (Haffner Decl. ¶¶ 5, 6, 12–15.) Haffner claims they were fired due to their age and without preliminary discipline as well. Both Britt and Boris testified at their depositions, however, that they had no reason to think they or others were discriminated against based on age. (Deposition of Carleton Britt 30:8–31:20, 49:11–19, Ex. 38 to DSOF [76-39]; Deposition of Robert Boris 105:12–106:12, Ex. 39 to DSOF [76-40].) Despite insisting that Boris was fired because of his age, Haffner admits to being told on multiple occasions that Boris was fired for altering employee timesheets. (PSAF ¶¶ 9–12.) Additionally, Haffner mentions for the first time in his affidavit three additional younger employees who he claimed were disciplined before (or without) being fired: Bennett Baker, Heidi Potter, and Erik Goodlad. (Haffner Decl. ¶¶ 7–11.) Haffner, however, makes no effort to establish how these younger employees were similarly situated to him, or whether they engaged in any of the conduct that he was fired for. Finally, the court notes that Haffner testified during his deposition to lacking personal knowledge of the discipline doled out to other employees. (Haffner Dep. 205:3–206:9.)

Haffner filed his charge of age discrimination with the EEOC on November, 15, 2014. In it, Haffner stated: "After [NCDC] promoted a much younger president in March 2014, I was targeted and singled out for termination based on my age." (Charge of Discrimination, Ex. A to Compl. [1-1].) On March 30, 2015, the EEOC issued Haffner a notice of his right to sue, but was unable to conclude that Haffner's information established a violation of the ADEA. (Dismissal and Notice of Rights, Ex. B to Compl. [1-2].) On June 27, 2015, Haffner filed the present one-count complaint against NCDC.[4] (Am. Compl. ¶ 11.)

---

[4] Defendant NCDC countersued for damages based on Haffner's sabotage. (Defendant NCDC's Counterclaims [15].) The parties later settled the counterclaims out of court. (Order Dismissing Counterclaims [66].)

8

Although Haffner was out of work for just ten weeks, and has been employed ever since, Haffner seeks over $700,000 in lost income, pain and suffering, and consequential damages. (*See* Plaintiff's Second Supp. Resp. to Defendant's First Set of Interrogatories ("Haffner Interrogatory Resp."), Answer 13, Ex. 25 to DSOF [76-26]; Plaintiff's Initial Disclosures 2, Ex. 40 to DSOF [76-41].) These damages, Haffner has claimed, relate to a wide range of injuries, including his lost wages, his wife's lost income, having to move to a smaller house, being forced to discard thousands of dollars' worth of personal possessions based on moving to a smaller house, the inability to visit friends, medical expenses related to a bat bite, and stress. (*Id.*)

## **DISCUSSION**

To prevail on a motion for summary judgment, the moving party must show that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). In ruling on a motion for summary judgment, the court views the evidence in the light most favorable to the non-moving party—here, Haffner—and draws all reasonable inferences in the non-moving party's favor. *Gillis v. Litscher*, 468 F.3d 488, 492 (7th Cir. 2006) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986)). A genuine dispute of material fact exists where "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Carroll v. Lynch*, 698 F.3d 561, 564 (7th Cir. 2012).

The ADEA prohibits employers from discriminating individuals "because of" their age. 29 U.S.C. § 623(a)(1). In *Gross v. FBL Financial Services, Inc.*, 557 U.S. 167 (2009), the Supreme Court held that the ADEA plaintiffs to prove that age was a "but-for" cause of their termination. *Id.* at 180. The Seventh Circuit has interpreted *Gross* to "require plaintiffs in ADEA cases to show evidence that could support a jury verdict that age was a but-for cause of the employment action at the summary judgment stage." *Fleishman v. Continental Cas. Co.*, 698 F.3d 598, 604 (7th Cir. 2012). One common way plaintiffs proceed in a discrimination case follows the burden-shifting framework created by *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). Under the *McDonnell Douglas* framework, a plaintiff establishes a *prima facie* case of discrimination by

9

setting forth evidence that (1) he was a member of a protected class, (2) his job performance met his employer's "legitimate expectations," (3) he suffered an adverse employment action, and (4) another similarly situated individual outside of the protected class was treated more favorably. *McKinney v. Office of Sherriff of Whitley Cty.*, 866 F.3d 803, 807 (7th Cir. 2017) (citing *McDonnell Douglas*, 411 U.S. at 802.) Once the plaintiff's *prima facie* case is established, the employer is free to "articulate some legitimate, non-discriminatory reason" for its decision. *Id.* The plaintiff may then attempt to prove that the employer's stated reason is mere "pretext." *Id.*

Regardless of how a plaintiff attempts to prove his case, however, the Seventh Circuit has instructed that "all evidence belongs in a single pile and must be evaluated as a whole." *Ortiz v. Werner Enterprises, Inc.*, 834 F.3d 760, 766 (7th Cir. 2016). The relevant question is simply whether a reasonable factfinder could conclude that NCDC terminated Haffner because of his age. *Id.* at 765.

Defendant NCDC has advanced numerous arguments for granting summary judgment in its favor. Defendant argues that Haffner has presented no evidence of actual discriminatory intent. (Defendant NCDC's Memorandum in Support of Def.'s MTD [79] ("Def.'s Opening Br."), 10.) Defendant also argues that, under the *McDonnell Douglas* framework, Haffner cannot establish a *prima facie* case of discrimination because he was not meeting its legitimate business expectations at the time he was terminated, nor has he pointed to any younger, similarly-situated employee who was treated better than he was. (*Id.* at 10–11.) Furthermore, even assuming Haffner could establish a *prima facie* case, there is no evidence to suggest that NCDC's decision was pretextual. (*Id.* at 12–13.)

Defendant also argues that, if Haffner were to prevail, he would nevertheless not be entitled to recover damages. Haffner seeks back pay, compensatory damages for pain and suffering, and consequential damages for both himself and his wife. Defendant argues that the after-acquired evidence doctrine applies in this case because Haffner sabotaged Defendant's

computer system the day he was fired. (*Id.* at 14) (citing *Sheehan v. Donlen Corp.*, 173 F.3d 1039, 1047 (7th Cir. 1999)). If true, Haffner would be barred from recovering back pay damages. The rest of Haffner's requested relief, Defendant argues, is simply not available under the ADEA.[5] (Id. at 17) (citing *Barton v. Zimmer, Inc.*, 662 F.3d 448, 454 (7th Cir. 2011) (pain and suffering damages are not available) and *Moskowitz v. Trustees of Purdue Univ.*, 5 F.3d 323, 326 (1995) (consequential damages are unavailable absent retaliation)).

Many of Defendant's arguments are compelling. For the purposes of Defendant's motion, however, the court need address only one: Haffner's inability to present evidence of age discrimination.

Haffner offers no basis for a finding of discriminatory animus in this case. Haffner cites only two statements by anyone working at NCDC to suggest that he was fired because of his age. Neither is convincing. Soulé's first statement explicitly referred to the need for NCDC's "*products* to stay young and trendy." (Haffner Age Discrimination Timeline 1; Haffner Dep. 304) (emphasis added). Furthermore, that statement was made four years before Haffner was terminated. No reasonable factfinder could conclude that this statement was in any way relevant to Defendant's decision. *See, e.g., Cerutti v. BASF Corp.*, 49 F.3d 1055, 1063 (7th Cir. 2003), *overruled on other grounds by Ortiz*, 834 F.3d at 765 ("[T]here is nothing inherently discriminatory about the colloquialism 'out with the old, in with the new[.]'"); *Bagwe v. Sedgwick Claims Mgmt. Services, Inc.*, 811 F.3d 866, 885 (7th Cir. 2016) (concluding that no reasonable juror could infer discrimination based on comments made over a year before plaintiff's termination).

Soulé's other statement, that Haffner was "not fitting in with culture" (Haffner Decl. ¶ 17), is no more helpful to Haffner's case. Even if Haffner had properly presented this evidence to the court, it would not matter. Whether an employee "fits in" at a company tells a factfinder

---

[5] Haffner concedes in his Response to Defendant's Rule 56.1 Statement that he is not entitled to compensatory damages for pain and suffering. (Pl.'s Resp. to DSOF ¶ 80.) By implication, Haffner is still seeking consequential damages.

nothing. The Seventh Circuit has held on numerous occasions that vague statements regarding an employee's "fit" do not speak to discriminatory animus. *See Simpson v. Beaver Dam Comm. Hosps., Inc.*, 780 F.3d 784, 791–92 (7th Cir. 2015) (collecting cases). Haffner may genuinely believe that Soulé "was referring to his age" (Haffner Decl. ¶ 17), but his subjective beliefs "are insufficient to create a genuine issue of material fact." *Simpson*, 780 F.3d at 794 (quoting *Hanners v. Trent*, 674 F.3d 683, 694 (7th Cir.2012)).

Haffner's attempt to advance a case under the *McDonnell Douglas* framework is similarly unsuccessful. Although Defendant argues that Haffner fails under both the second and fourth prongs of the test, only Haffner's failure to establish that he was meeting NCDC's legitimate business expectations at the time of his termination warrants discussion. Haffner repeatedly invokes the "highly effective" rating he received in his Performance Review. (*See* Plaintiff's Brief and Memorandum of Law and Response to Def.'s Opening Br. [96] ("Pl.'s Resp. Br."), 2, 7, 10, 11, 13.) That Review occurred more than two months prior to his termination, however. The majority of the incidents of insubordination and disrespect exhibited by Haffner occurred *after* his review. (DSOF ¶¶ 31–46.) "What matters in a discriminatory discharge case is not the employee's past performance, but whether [he] was meeting the company's expectations at the time of [his] discharge." *Johal v. Little Lady Foods, Inc.*, 434 F.3d 943, 946 (7th Cir. 2006) (quoting *Cengr v. Fusibond Piping Systems, Inc.*, 135 F.3d 445, 452–53 (7th Cir.1998)) (stating that plaintiff's "duties and supervision changed within the 6 months between her review and her discharge").

Furthermore, Haffner's insistence that his Performance Review serves as an impenetrable shield is belied by the face of the document. It explicitly mentions that Haffner was disciplined for "careless[ly]" disclosing internal communications, and discusses the failed SYSPRO project in detail. (2014 Annual Review of Todd Haffner 2–3, 6–9.) The document as a whole is mixed in its assessment of Haffner's performance. Haffner correctly claims that he was never "blamed" for the SYSPRO failure (Haffner Decl. ¶¶ 1–4, 22–25), yet that was not one

of NCDC's stated reasons for firing him.  Rather, NCDC's management repeatedly expressed their hopes that Haffner would learn from the experience and "take responsibility" for his team's performance.  (DSOF ¶¶ 6–8, 22, 23, 36, 38–40, 48; Def.'s Resp. to PSAF ¶¶ 1, 3, 5–7, 20.)  The undisputed evidence shows that Haffner did not learn, and did not take responsibility.  Even to this day, Haffner has failed to recognize the counterproductive nature of deflecting any suggestion that he may be held responsible for his actions.  Finally, the court notes that NCDC was an at-will employer, which, by all serious accounts, did not require "progressive discipline" before it could terminate employees for misconduct.

Haffner disagrees with the meaning that NCDC attributes to his actions (*see* PSAF ¶¶ 21–23)—if Haffner admits to a given action at all—and suggests that NCDC's reasons for firing him were mere pretext for their "ambush termination[,] . . . a cleaver [sic] plan put into motion to terminate Haffner." (Pl.'s Resp. Br. 7.)  Haffner concludes that "one would question the wisdom of terminating Haffner after O'Connor gave him a superior rating." (Pl.'s Resp. Br. 11.)  Courts, however, are not concerned with the wisdom of an employer's decision.  *Gates v. Caterpillar, Inc.*, 513 F.3d 680, 689–91 (7th Cir. 2008) (citing *Giannopoulos v. Brach & Brock Confections, Inc.*, 109 F.3d 406, 410 (7th Cir.1997)).  "The question is never whether the employer was mistaken, cruel, unethical, out of his head, or downright irrational in taking the action for the stated reason, but simply whether the stated reason *was* his reason: not a good reason, but the true reason." *Forrester v. Rauland-Borg Corp.*, 453 F.3d 416, 418 (7th Cir. 2006).  This court cannot conclude that Defendant's stated rationale was anything but honest. *Id.* at 419.

As Defendants note, Haffner's response brief is "a meandering, stream-of-consciousness" diatribe which "largely resorts to grade-school name calling." (Defendant NCDC's Reply Brief in Further Support of Def.'s MTD [104] ("Def.'s Reply Br."), 1, 16.)  It is riddled with spelling and grammatical errors, sections that end abruptly and resume several pages later, and contains references to persons, events, and causes of action that have no

relationship to Haffner's lawsuit.[6]  It is clear that Haffner does not understand his burden in this case.  When asked to describe with specificity the willful age discrimination alleged in his Amended Complaint, Haffner stated:

> (1) The EEOC knows that an employee proving discrimination is nearly impossible.  Therefore, **if an employee feels like they were discriminated against, then the employee was discriminated against.**
>
> (2) If an employee had to prove discrimination, the EEOC would be a worthless organization and discrimination would occur all the time in the workplace without any protection to the employee discriminated against.
>
> (3) The EEOC mandates that it not up to the employee to prove discrimination; **it is up to the company to prove beyond a doubt that there was no discrimination**.

(Haffner Interrogatory Resp. Answer 20) (emphasis added).  Not so.  This is a baseless lawsuit that has gone on for long enough.  The court declines, however, to issue sanctions in this case.  Haffner's behavior has been disappointing, but the end of this action is sufficient punishment.

## **CONCLUSION**

Defendant's motion for summary judgment [74] is GRANTED.  Defendant's motion for sanctions [85] is DENIED.

ENTER:

Dated: March 30, 2018

_____
REBECCA R. PALLMEYER
United States District Judge

---

[6] The first page of Haffner's responsive brief states that NCDC discriminated against Haffner on the basis of age and *race.* (Pl.'s Resp. Br. 1.)  This is the first and only time that racial discrimination has been mentioned in connection with Haffner's case.